The first of the argued cases is number 2682, United States v. Dejesus, for the appellant. Let's hear from Mr. Einhorn. Yes, Your Honor. Good morning, Your Honors. It's John Einhorn from New Haven. I represent Mr. Dejesus, the appellant, and I also represented him at the district court on his plea and wanted to make here, which I think is pretty obvious, is that the nature of the conduct and the flight is really a situation where the cart was driving the horse. The government, very correctly, goes through great detail as to his flight, and it was dangerous and it was and 20 grams of heroin, 10 grams of fentanyl, 55 grams of cocaine. And what's driving this bus is the nature of his flight. Now, there obviously is a real question about his motivation for the flight. There's nothing good about it, obviously, but he was in a dispute with his baby mother. He went through several counts in Connecticut on a high-speed chase. I don't want to minimize it at all, and I think the government accurately goes into detail about how dangerous it was. The problem is that the guideline sentence here was 70 to 87 months. We asked for a departure to 60 months because he was a drug addict, and that was really his problem. The government asked for a sentence at the high end of the guidelines range, which would have been 87, was the top of the guidelines range. Instead, the judge gave us notice that he was considering an upward departure based upon the flight issue and went up more than said that there was a nexus between the flight and the federal count. It isn't clear on the law that a nexus is needed, but he assumed, arguendo, there was a nexus. He found the nexus on the basis of the fact that your client had drugs and guns during the flight, which was related to the variance, even if it isn't an enhancement. He went through all the five factors in great detail. I don't see where you're going, frankly, because even if there would be a question, the local, the state crime is against the federal crime. The district judge seems to have touched all the bases. Where am I wrong? I agree with what your honor has said. I think that the problem that we have is that he was already punished, again, looking at this as a guideline sentence, with an enhancement, a two-level enhancement for that flight. Then he gets essentially punished by this departure or variance. There is some confusion as to which one it was. I think the judge mentioned both. I understand, again, how horrible the whole thing was. We do think that- But it isn't for us to say whether it was horrible or not. It's for us to say that he did everything that it was supposed to do. If in the end, having done that, this is something that is within the range of the possible. That's what we've held. I think that there are some upper limits as to what's within the range of the possible or likely. From a defendant's perspective, when you've already gotten an enhancement for two and from a defendant's perspective, where you know that there's- Well, you should know that there's some state court issues involving your dispute with your baby mother. Should you anticipate in anybody's universe- Can I just ask about the enhancement? You just said he was getting the enhancement in addition to the departure. Of course, the guidelines say you get the two-level enhancements for causing a substantial risk of injury to another person in the course of fleeing. Application note six says if it's lots of other people, then you should do a departure. He's not actually, just by the two-level enhancements, accounting for the danger to all the people to whom he caused a risk of injury, right? Yes, but we rely on essentially the probation report, which seemed to find that the two-level enhancement was adequate in computing the guidelines range. I know the sentencing judge was obviously upset about the number of people and the number of towns, obviously, in terms of this run from police. I do think there's some significance to the disputed factors to whether or not it was a federal or a state offense. I know Judge Calabresi just said that because of the drugs and the guns involved, they were likely federal. I don't know that the facts of this case really might come to that conclusion. Well, the plea agreement already stipulated to the two-level enhancement for a dangerous flight under 3C12, right? Absolutely. So, if the plea agreement already stipulated to the two-level enhancement for a flight, then you're assuming that that conduct did happen during a flight for which the district court could impose a sentence, right? So, haven't you conceded, essentially, that he was fleeing from the federal charges, if that's what was required? Yes, I think that's right, with one exception, that it's the extent of the flight. As I was saying, the government goes into great detail about the extent of the flight, and at some point, it's far outside of his concession, I believe, in the two-level enhancement for flight. And apparently, the district court agreed with that assessment also. But I do think that at some point, there's upper limits on what you can do, or what you should do, frankly, with a defendant under these circumstances. What are those upper limits, exactly? You talked about the cart driving the horse, because the drugs were not as significant as the flight. But if somebody engages in disproportionate dangerous flight conduct in response to an offense, I mean, wouldn't the district court be able to account for that? Yes, I think that's right. But I do think that in this particular case, on the facts of this particular case, the district court went up more than 50% over the lower section of the guideline. Counsel, are you making the argument that this sentence is substantively unreasonable, when you say there are some limits to the upper? Because that's a very different argument from the argument that there were procedural errors in what the district court did. But I didn't see in your brief really any argument that this was substantively unreasonable. I'm not sure you could make it, given our precedence in that. But that's what you seem to be arguing to us today. Well, I don't think I could realistically argue that based on the precedent. I agree. I had looked at that possibility. I think that keeping this in perspective, at least from our perspective on this, that it was a flight motivated by a state court dispute that, in fact, there are state court cases on this. And I do think he was punished for the flight, which was conduct basically unknown to him as being federally related. Can I ask you this? Let's assume for a moment that section 3C12 includes the knowledge requirement that you are proposing. It's not clear to me, perhaps you can help me understand why the district court's conclusion that he was aware that he was fleeing from arrest for a federal crime was clearly erroneous. Because if you look at the evidence propounded by the district court supporting this finding, it includes that while the defendant was engaging in some of the conduct underlying his conviction while fleeing, the defendant said, and I quote, they're going to kill me when he was apprehended, suggesting that he thought he was being arrested for more serious crimes. I don't read it that way. Going back to the beginning, however, of your query, Your Honor, yes, the district court also based the finding that it was somehow federally related on the fact that there was a marshal involved in the task force, which more than likely had to do with the but he wouldn't have known that. He was focused on his conduct as bad as it was with his baby mother. And so I think that's where his focus was. We don't believe that he had any concept whatsoever that somehow this was related to a drug case or federal drug case. Okay, Mr. Einhorn, you've reserved time for rebuttal. So we'll hear from you again. But let's turn to the government, Ms. Coronado. Good morning, Your Honors. Yes, Assistant U.S. Attorney Elena Coronado for the government. So in this case, as was just discussed, the district court did impose an above guideline sentence of 108 months, largely to reflect the defendant's staggering course of conduct in his flight from police. And of course, that course of conduct included his theft of three cars, his kidnapping and abuse of an intimate partner, his possession of eight guns, and also this series of just tremendously reckless car chases that put many lives at risk. As you just heard, there's really no dispute as to the fact. Rather, on appeal, the defendant challenged both the above guideline sentence, which was higher than the guidelines calculation in the plea agreement. And second, the application of an enhancement for reckless endangerment during flight under Section 3C1.2 of the Sentencing Guidelines. And these challenges are frankly just without basis in fact or law. I'll briefly cover this because, of course, this is just discussed and covered in much greater detail in our brief. But as to the first challenge, the sentencing judge acted well within his discretion in imposing an above guideline sentence. Either by upward departure or variance, there's just really nothing improper about a sentence that's higher than a guideline calculation in the plea agreement. And Federal Rule of Criminal Procedure 11 makes that quite clear. 11C1b says plea agreement sentencing recommendations do not bind the court. The defendant was fully aware of that fact. He had a plea agreement with language that said that in multiple places. He was advised repeatedly at the change of plea hearing about that fact. And the sentence itself was reasonable, you know, to the extent that the defense is now at oral argument, arguing that it was somehow perhaps substantively unreasonable, which I didn't hear Mr. Einhorn say. But to the extent that's sort of the thrust of the argument, you know, I would just say that the sentence was certainly in no way shocked to the conscience. It was procedurally reasonable. It was exhaustively explained on the record with reference to all of the facts and statutory factors, including the particular set of facts that the court, were not fully encapsulated in the guidelines range. And that included the, you know, violence towards the defendant's girlfriend and the number of guns in his arsenal. And just what about the violence? What about the violence toward his girlfriend? What about the point that, you know, kidnapping and engaging in domestic violence does not seem to be conduct as part of a flight from federal charges? I think that that's a perfectly fair characterization, but the court is considering not just the specifics of the flight conduct, but the totality of the defendant's history and characteristics and the seriousness of his domestic violence conduct and determine whether the upward departure or variance was justified based on the other conduct. Is that what you're suggesting? I don't suggest that. In fact, I think that this kind of week-long free and flight from police included that violence. And, you know, when you look at the PSR and in the sentencing transcript, you do see that one of the motivations, it appears, for the violence towards his girlfriend was that he told her, I just don't want to go back to jail and basically threatened to kill her if she turned on him or somehow enabled his return to jail. So I really do think that all of these factors are part of the flight here, but they're also, as the district court found, part of the other 3553A factors. And so, you know, here, I think, at least in the briefing, the defendant argues that it was error to impose any sentence above that outlined in a plea agreement or that by doing so, the court somehow didn't enforce the plea agreement. And, you know, that argument is unfounded. Of course, there is a binding plea procedure under Rule 11C1C, but this just wasn't one of those agreements. And so, you know, there simply was no unreasonableness, no abuse of discretion here. And in particular, as to the enhancement under Section 3C1.2, either the enhancement or the upward departure under Application Note 6 of 3C1.2, the fact is that the defendant indisputably fulfilled those criteria. He recklessly endangered not just one person, but multiple people in multiple flight incidents over the course of multiple days. And here, the notion that the enhancement shouldn't apply because perhaps the defendant wasn't aware of the specific pending federal charges or allegedly thought he was focused on a state protected violence prosecution, potential prosecution, is just unfounded, both factually and legally. As the court pointed out a few moments ago, the district court did find that the defendant likely was aware of the federal charges and was, in fact, committing federal crimes while in flight. And it's, frankly, irrelevant which of his multiple crimes were top of mind while he was fleeing. There's just nothing in Section 3C1.2 that would require that kind of narrow construction. Is it your position that any attempt to flee from the police that recklessly creates risk of death or serious bodily injury satisfies 3C1.2, regardless of its relation to the offense of conviction? Yes. The application notes to 3C1.2 specifically say that it is supposed to be construed broadly. And what if a defendant fled from the police before even committing a federal crime? Well, if a flight is not at all connected to a federal crime, I think that it would be hard to know how this particular series of events would unfold because I would imagine that, under those circumstances, if there wasn't a federal crime. What if it was in the course of fleeing from the federal crime, but it's clear that the particular incidence of flight is not related? So, while he's on the run from federal charges, he goes to some store and shoplifts something, and then a policeman tries to stop him, and he runs from that policeman and does something dangerous. And it's clear that he's fleeing because of the shoplifting. I mean, would we still count that because it happened in the course of a or could we say that that is not part of the relevant flight? I think if the defendant is recklessly creating a substantial risk of death or serious bodily injury in the course of flight from a police officer, then yes, this enhancement applies. Well, there are some cases, some circuits that say that nexus is not needed. There are others that say that it is. And if we had to decide, we'd have to decide that. But I take it the crust of your argument is that on the facts of this case, even if nexus is needed between the flight and the federal one, there was sufficient nexus. There certainly was, Your Honor. And the district court found on the basis of that statement that the defendant made at the time of his arrest, the fact that he was actually committing federal crimes while in flight, he did possess the guns unlawfully, he possessed the drugs, that there was a nexus. Frankly, that also just stands to reason his co-defendants had been arrested a week prior. And, you know, he was telling his girlfriend that he was afraid of kidnapping her as part of the flight. Is the nexus to the federal charges that he seems to have been concerned about the federal charges after he kidnapped her and was engaging in domestic violence conduct? Or was the kidnapping somehow part of the flight? The kidnapping was certainly part of a week-long course of conduct that involved the flight. And, you know, his statements certainly suggest a nexus there. I will say that the sentencing judge did not focus heavily on that particular aspect of the domestic violence crimes that he committed while in flight. It at least didn't focus in that way. He certainly focused on the domestic violence crimes as a component of the 3553A factors and the fact that he felt that the public really needed protection from the defendant and that, you know, this was a factor as far as deterrence and the defendant's specific history and characteristics. But really, you know, this entire course of conduct is something that the sentencing judge had to take into account. He found a factual nexus. There is, as this court pointed out, no clear error in that finding. And then beyond that, the sentencing judge specifically made this record that the ultimate sentence would have been reached via a variance if an upward departure under 331.2 wasn't available. And as far as the government can tell, there isn't, you know, any specific challenge on appeal to that sentence if it's construed as a variance, nor in the government's view could there be. You know, there simply is no error here and no basis to disturb this sentence. Let me ask a question and help me understand. You seem to say that we can affirm even if section 3C12 did not apply to the defendant's conduct because the district court would have imposed the same sentence by way of a variance. Yes, that's right. Now, in that scenario, would we need to remand based on the district court's miscalculation in the guidelines range? No. So, I may have kind of inarticulately stated the position. I think that the two-level enhancement under 3C1.2 does apply. The defendant agreed that it applied in the plea agreement and the defendant actually even agreed in his sentencing memorandum. It wasn't until the day of sentencing that the defendant sort of made an about based on that. The upward departure also applies under 3C1.2 here. And I merely referenced the variance because there is this other possible method to getting at the exact same sentence, which is also lawful, which can further emphasize the legality of this particular sentence. I don't think there was any error and the defendant hasn't established any error in the 3C1.2 application. But also because of the nature of the sentencing judge's comments at the sentencing and in the judgment thereafter, this sentence could also be construed as a lawful variance, which would not require a remand. Thank you. Okay. Thank you, Ms. Coronado. We'll turn back to Mr. Einhorn for rebuttal. Yes, Your Honor. Just briefly, it seems to me that the kidnapping itself is what caused this entire horrible fight here. And the kidnapping was caused because she broke up with him. I don't know that it's possible to say that the district court didn't have that the kidnapping issue in mind and punishing him as he did and sentencing him as he did. It's certainly significant. But it really isn't part of any drug related offense whatsoever. She wasn't kidnapped. I mean, is it possible that sometimes people engage in violent act as part of their flight? So if he had thought, you know, they're after me to put me in prison, I need to finish, I need to get done with, you know, my unfinished business with my girlfriend or whatever. And so he engages in it because he wants to accomplish something before he's ultimately captured. Wouldn't that be part of his flight? I think it's more likely that he was frustrated that she broke up with him. She was his baby mother. Life wasn't going too well for him. At this point, he knew, as the government says, that his co-defendant had already been arrested. And so he decided to take out this violence on his girlfriend. But I don't think it was, I don't think it'd be fair to say that it was it was related to the federal offense, even the fact that he had guns and drugs. But I guess I guess I guess you're you sort of acknowledge that sometimes this kind of an action might be related to the flight. And so does the district, what kind of analysis does the district court need to go into to determine whether it's related or not related? And what was what was insufficient about the district court's analysis here where he thought it was? You know, I think that there's there's I'm obviously not a psychiatrist, but there's probably something that goes through your mind. And maybe thinking about the possibility of a federal sentence had had set him off. And maybe he was psychologically, I guess, on edge at the time. But there's no evidence of that. The only he really did this because she broke up with him. I think that's the only evidence. I didn't answer one of the earlier questions that your honors asked me about the statement he made about they're going to kill me. I think that applies as much to local police as it does to federal, probably more so from what we know these days to local police than federal. So I'm not sure that the fact that he said they're going to kill me should be applied to a fear of federal marshals as opposed to a fear of West Hartford or New Britain police officers. Thank you. Okay. Thank you, Mr. Einhorn. The case, the case is submitted.